IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

    v.                                    **CRIMINAL NO. 1:24-CR-61**
                                                             **(KLEEH)**

**JAMES LEONARD BAILEY, III,**

    **Defendant.**

**MEMORANDUM OPINION AND ORDER REJECTING REPORT AND RECOMMENDATION [ECF NO. 40] AND DENYING MOTION TO SUPPRESS [ECF NO. 26]**

Pending before the Court is a Report and Recommendation ("R&R") by the Magistrate Judge recommending that the Court grant Defendant's motion to suppress. For the reasons discussed herein, the R&R is **REJECTED**, and the motion to suppress is **DENIED**.

## I.    BACKGROUND

On October 16, 2024, the grand jury returned a two-count Indictment charging Defendant James Leonard Bailey ("Defendant") in Count One with Possession with Intent to Distribute Five Grams or More of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(viii), and in Count Two with Unlawful Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). The evidence supporting the charges was seized during a traffic stop on February 28, 2024. Defendant has moved to suppress the evidence, arguing that the traffic stop was unconstitutional. The Court referred the motion to suppress to the Magistrate Judge, who

**MEMORANDUM OPINION AND ORDER REJECTING REPORT AND RECOMMENDATION [ECF NO. 40] AND DENYING MOTION TO SUPPRESS [ECF NO. 26]**

held a hearing on the motion and entered an R&R recommending that it be granted. The Government timely filed objections to the R&R.

## II. FACTS

The Court finds the following facts based on the testimony and arguments at the suppression hearing, the parties' briefs, and the exhibits to both the hearing and briefs.

On the evening of February 28, 2024, Officer Andrew Moore ("Moore") with the Stonewood Police Department was on duty. He was parked on the side of Cost Avenue in Stonewood, West Virginia, looking for traffic violations, when he observed Defendant's vehicle traveling east on Cost Avenue. Moore knew of Defendant because other officers had told him about Defendant's prior involvement with illegal controlled substances. On previous occasions, while working night shift, Moore had observed Defendant making frequent, quick trips, which suggested to Moore that Defendant was involved in some sort of narcotic activity. Moore had also conducted a brief traffic stop of Defendant earlier in 2024 after mistaking Defendant's vehicle for another vehicle.[1] Moore knew where Defendant lived.

---

[1] During the previous stop, Moore did not observe any evidence of a crime. Defendant did not appear to be under the influence of drugs.

**MEMORANDUM OPINION AND ORDER REJECTING REPORT AND RECOMMENDATION [ECF NO. 40] AND DENYING MOTION TO SUPPRESS [ECF NO. 26]**

Prior to February 28, 2024, Moore had frequently spoken with the mayor of Stonewood about local drug trafficking. The mayor, who lived on the same street as Defendant, shared with Moore that he often observed Defendant leaving his home at night. The mayor told Moore that individuals who are known drug users in the area would come to Defendant's home. Moore's chief had also previously informed Moore that Defendant had been involved with using and selling controlled substances. At the suppression hearing, Moore was aware that Defendant was previously convicted of a federal crime involving illegal substances in this Court, but he did not learn this information until after the traffic stop on February 28, 2024.

The evening of February 28, 2024, Moore decided to follow Defendant's vehicle. He followed the vehicle for about half or three-quarters of a mile. Defendant was traveling the speed limit or a little below it while driving on Cost Avenue. Defendant used his turn signal to turn right onto Lightner Avenue from Cost Avenue and immediately began to speed up. Moore believed that Defendant was attempting to evade him, so he sped up to follow Defendant. Neither Moore nor Defendant exceeded the speed limit on Lightner Avenue. Defendant then turned left, without using his turn signal, onto Loria Street from Lightner Avenue. Neither Moore nor Defendant exceeded the speed limit at that time. Moore sped up to

Case 1:24-cr-00061-TSK-MJA   Document 60   Filed 01/29/25   Page 4 of 14 PageID #: 289

USA V. BAILEY                                                    1:24-CR-61

**MEMORANDUM OPINION AND ORDER REJECTING REPORT AND RECOMMENDATION [ECF NO. 40] AND DENYING MOTION TO SUPPRESS [ECF NO. 26]**

catch up to Defendant and activated his lights to conduct a traffic stop. Defendant continued to drive for a few hundred yards until he turned right onto Brannon Avenue, using his turn signal, and pulled into his own driveway. Moore did not need to use his brakes at any point while following Defendant's vehicle. There were no other cars on the road while he followed Defendant, and there were no other cars nearby while he conducted the stop.

Moore approached Defendant's vehicle. His interactions with Defendant led to a search of the vehicle and the individuals inside it. Law enforcement seized controlled substances, drug paraphernalia, currency, and a firearm. Defendant was arrested. During a mirandized interview at the police station, Defendant told Moore that he had purchased 48 grams of methamphetamine earlier in the day and sold some of it. Nothing that took place after the initial stop is being challenged in Defendant's motion.

### III. REPORT AND RECOMMENDATION AND OBJECTIONS

Defendant challenges only the legality of the traffic stop. Specifically, he argues that he did not commit a traffic violation when he failed to use his turn signal, and he disputes that he was attempting to evade Moore. In the R&R, the Magistrate Judge agreed. The R&R provided that the parties had 14 days from service of the R&R to file "specific written objections, identifying the portions of the Report and Recommendation to which objection is

**MEMORANDUM OPINION AND ORDER REJECTING REPORT AND RECOMMENDATION [ECF NO. 40] AND DENYING MOTION TO SUPPRESS [ECF NO. 26]**

made, and the basis of such objection." The Government timely filed objections, objecting to the following findings in the R&R:

- "that the stop was not proper";

- "that the purported evasive behavior did not provide a basis for the stop";

- "that Moore did not have probable cause to initiate the traffic stop because Defendant's failure to use the turn signal could not have affected Moore's vehicle";

- "that Moore did not have reasonable suspicion to initiate the traffic stop because Defendant did not evade Moore nor did Defendant's actions suggest the commission of criminal activity";

- "that the traffic stop was not a reasonable mistake of law under the circumstances"; and

- "that there was not probable cause to conduct a traffic stop because Defendant did not violate a traffic violation, nor did he attempt to evade Moore."

When reviewing a magistrate judge's R&R, the Court must review de novo only the portions to which an objection has been timely made. 28 U.S.C. § 636(b)(1)(C). Otherwise, "the Court may adopt, without explanation, any of the magistrate judge's recommendations" to which there are no objections. Dellarcirprete v. Gutierrez, 479 F. Supp. 2d 600, 603-04 (N.D.W. Va. 2007) (citing Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983)). Courts will uphold portions of a recommendation to which no objection has been

Case 1:24-cr-00061-TSK-MJA   Document 60   Filed 01/29/25   Page 6 of 14  PageID #: 291

USA V. BAILEY                                                        1:24-CR-61

**MEMORANDUM OPINION AND ORDER REJECTING REPORT AND RECOMMENDATION [ECF NO. 40] AND DENYING MOTION TO SUPPRESS [ECF NO. 26]**

made unless they are clearly erroneous.  See <u>Diamond v. Colonial Life & Accident Ins. Co.</u>, 416 F.3d 310, 315 (4th Cir. 2005).  It appears that there is no dispute as to the facts of the case.  Given the Government's objections, the Court conducts a <u>de novo</u> review of the legal conclusions reached.

## IV.  DISCUSSION

Defendant argues that the stop was unlawful because his failure to use his turn signal did not affect other traffic.  He also disputes that he was attempting to evade Moore.  The Government argues that the stop was lawful because Moore was traveling behind Defendant when he failed to use his turn signal, so other traffic could have been affected.  The Government also argues that Defendant attempted to evade Moore when he accelerated and did not immediately pull over.  The Government asserts that these facts, when coupled with Defendant's known drug activity, justify the stop.  After considering the parties' briefs, their arguments, and all testimony and evidence introduced at the suppression hearing, the Court finds that Moore had probable cause to conduct the traffic stop, and the evidence seized during the traffic stop will not be suppressed.

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures, shall not be

**MEMORANDUM OPINION AND ORDER REJECTING REPORT AND RECOMMENDATION [ECF NO. 40] AND DENYING MOTION TO SUPPRESS [ECF NO. 26]**

violated." U.S. Const. amend. IV. It is well-established that "[a] traffic stop is a 'seizure' within the meaning of the Fourth Amendment and must be reasonable under the circumstances." United States v. Palmer, 820 F.3d 640, 648 (4th Cir. 2016) (citing Delaware v. Prouse, 440 U.S. 648, 653-54 (1979)). A seizure, such as a traffic stop, must be supported by "a 'reasonable suspicion,' based on articulable, particularized facts, that 'criminal activity may be afoot.'" United States v. McCoy, 513 F.3d 405, 410-11 (4th Cir. 2008) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)).

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred," and any ulterior motive is irrelevant. See Whren v. United States, 517 U.S. 806, 810 (1996); see also United States v. Palmer, 820 F.3d 640, 649 (4th Cir. 2016) (stating that a traffic stop is reasonable at the outset "whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation" and that "[w]ithout question, such a violation may include failure to comply with traffic laws") (internal citation and quotation omitted). "[O]nly the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." Illinois v. Gates, 462 U.S. 213, 235 (1983).

Case 1:24-cr-00061-TSK-MJA   Document 60   Filed 01/29/25   Page 8 of 14  PageID #: 293

**USA V. BAILEY**                                                    **1:24-CR-61**

**MEMORANDUM OPINION AND ORDER REJECTING REPORT AND RECOMMENDATION [ECF NO. 40] AND DENYING MOTION TO SUPPRESS [ECF NO. 26]**

Under West Virginia law, "[n]o person shall so turn any vehicle without giving an appropriate signal . . . in the event any other traffic may be affected by such movement." W. Va. Code § 17C-8-8(a); see also Clower v. W. Va. Dep't of Motor Vehicles, 678 S.E.2d 41, 46 (W. Va. 2009) (superseded by statute on other grounds) (explaining that the purpose of the statute is to "warn others of the motorist's intent to make a turn" but that there are instances where the use of a turn signal is not required because no other traffic may be affected).  Thus, the question here is whether Moore had probable cause to believe that Defendant's failure to use his turn signal may have affected other traffic (i.e. Moore's vehicle).  The Court finds that the answer is yes.

The United States Court of Appeals for the Fourth Circuit has reached the same conclusion at least twice in connection with Virginia's turn-signal statute, which is very similar to West Virginia's:

> Every driver who intends to back, stop, turn, or partly turn from a direct line . . . , whenever the operation of any other vehicle may be affected by such movement, shall give the signals required in this article, plainly visible to the driver of such other vehicle, of his intention to make such movement.

Va. Code § 46.2-848.

In United States v. Agee, a police officer stopped a driver, Agee, for failing to use his turn signal, and Agee was ultimately

8

**MEMORANDUM OPINION AND ORDER REJECTING REPORT AND RECOMMENDATION [ECF NO. 40] AND DENYING MOTION TO SUPPRESS [ECF NO. 26]**

charged with federal drug and firearm crimes. 168 F.3d 483, at *1 (4th Cir. 1999) (unpublished). Agee argued that the government presented "scant evidence" that the operation of other vehicles was affected, so the officer lacked probable cause to stop him. Id. at *2. The Fourth Circuit noted that the "inquiry regarding probable cause is markedly different" than it is to establish a conviction for a moving violation. Id. The question, the court clarified, is not "whether he actually committed a violation of the statute," but, rather, "whether the officer who stopped his vehicle had probable cause to believe that a traffic violation had occurred." Id. The court found that because there were "other vehicles in the area of Agee's unannounced right turn, including the officer's squad car, there existed at least the probability that one of them 'may [have been] affected' by Agee's turn." Id.

In United States v. Harvey, a police officer stopped a driver, Harvey, for failing to use his turn signal. 269 F. App'x 329, 330 (4th Cir. 2008) (unpublished). The officer's vehicle was parked close to where Harvey came to a stop, and another vehicle was following closely behind Harvey. Id. The Fourth Circuit found that Harvey's turn "could have affected one or both of these vehicles." Id. The court noted that while the officer's observation might not have been sufficient, standing alone, to constitute a prima facie showing that the statute was violated, it

9

Case 1:24-cr-00061-TSK-MJA   Document 60   Filed 01/29/25   Page 10 of 14 PageID #: 295

USA V. BAILEY                                                    1:24-CR-61

**MEMORANDUM OPINION AND ORDER REJECTING REPORT AND RECOMMENDATION [ECF NO. 40] AND DENYING MOTION TO SUPPRESS [ECF NO. 26]**

was sufficient to establish "a probability that Harvey violated the statute."  Id.

In 2009, the Supreme Court of Appeals of West Virginia decided Clower v. West Virginia Department of Motor Vehicles, 678 S.E.2d 41 (W. Va. 2009), and it engaged in the type of analysis that was rejected by the Fourth Circuit in Agee and Harvey.  In Clower, a police officer stopped a vehicle for failing to use a turn signal. Id. at 43.  The officer was driving approximately two city blocks behind the vehicle at the time.  Id.  There were no other vehicles on the roadway.  Id.  After the officer stopped the vehicle, a DUI investigation and arrest ensued.  Id.  The Supreme Court analyzed whether the officer had reasonable suspicion to stop Clower's vehicle.  Id. at 46–47.  The court concluded that he did not, finding, in part, that "it is difficult . . . to conclude that Trooper Kessel was in any manner affected by Mr. Clower's making a right turn without signaling."  Id. at 49.  The Court then wrote that "Trooper Kessel could not possibly have been affected by Mr. Clower's right turn."  Id.

As discussed in Agee and Harvey, the question is not whether Moore _was_ affected by Defendant's turn; the question is whether Moore had probable cause to believe that he _may_ have been affected. Moore was the only vehicle traveling in the area.  He was traveling directly behind Defendant.  Moore did not need to turn his vehicle

10

**MEMORANDUM OPINION AND ORDER REJECTING REPORT AND RECOMMENDATION [ECF NO. 40] AND DENYING MOTION TO SUPPRESS [ECF NO. 26]**

or stop abruptly — or stop at all — due to Defendant's failure to use a turn signal.  Moore did not apply his brakes.  Based on Fourth Circuit precedent, though, such actions were not necessary to establish probable cause.  Just because Moore was not affected in this instance does not mean that there was no possibility that he could have been.  After reviewing all of the evidence, including the video footage from Moore's vehicle (which shows how close the vehicles were to one another), the Court finds that it was reasonable, under the totality of the circumstances facing Moore, for Moore to believe that he may have been affected by Defendant's failure to use his turn signal.

Other federal courts of appeals have upheld the validity of traffic stops in similar circumstances when analyzing similar turn signal statutes, implicitly or explicitly rejecting the argument that the Government must show that traffic was, in fact, affected by a signal-less turn.  See, e.g., United States v. Crawley, 526 F. App'x 551, 556 (6th Cir. 2013) (finding a "fair probability . . . [that the] failure to signal could have affected the car preparing to enter the highway," which is "all that the Virginia statute and the Fourth Amendment require to conduct a

**MEMORANDUM OPINION AND ORDER REJECTING REPORT AND RECOMMENDATION [ECF NO. 40] AND DENYING MOTION TO SUPPRESS [ECF NO. 26]**

traffic stop")[2]; United States v. Quattlebaum, 331 F. App'x 755, 756 (D.C. Cir. 2009) (finding that one police car directly behind the turning vehicle and another police car traveling toward the turning vehicle "could have been affected by the turn")[3]; United States v. Burkley, 513 F.3d 1183, 1187 (10th Cir. 2008) (finding that "a vehicle traveling approximately one-and-a-half car lengths behind another vehicle 'may be affected' by" a failure to signal and that "the officer had ample reason to suspect that Defendant had violated the state statute")[4]; United States v. Dent, 258 F. App'x 626, 628 (5th Cir. 2007) (noting that "[t]he statute does not require . . . a finding" that the "turn did not affect anyone")[5]; United States v. Rodriguez-Lopez, 444 F.3d 1020, 1023

---

[2] The Sixth Circuit was applying the Virginia turn signal statute, discussed above, and relied on Harvey, 269 F. App'x 329, in reaching this finding.

[3] The D.C. Circuit was applying a District of Columbia municipal regulation, which required a turn signal "if any other traffic may be affected by the movement." D.C. Mun. Regs. tit. 18 § 2204.3. The Quattlebaum court also recognized that "[c]ourts interpreting identical statutes have held that a driver violates the law by failing to signal when trailed by a police car[.]" Quattlebaum, 331 F. App'x at 756 (citing United States v. Burkley, 513 F.3d 1183, 1187 (10th Cir. 2008); State v. Williamson, 138 N.J. 302, 650 A.2d 348, 349 (1994); People v. Miranda, 17 Cal. App. 4th 917, 930, 21 Cal. Rptr. 2d 785 (Cal. Ct. App. 1993)).

[4] The Tenth Circuit was applying Oklahoma law, which required a turn signal "in the event any other traffic may be affected by such movement[.]" Okla. Stat. tit. 47 § 11-604(A).

[5] The Fifth Circuit was applying Mississippi law, which required a turn signal "in the event any other vehicle may be affected by such movement." Miss. Code Ann. § 63-3-707.

Case 1:24-cr-00061-TSK-MJA   Document 60   Filed 01/29/25   Page 13 of 14 PageID #: 298

USA V. BAILEY                                                    1:24-CR-61

**MEMORANDUM OPINION AND ORDER REJECTING REPORT AND RECOMMENDATION [ECF NO. 40] AND DENYING MOTION TO SUPPRESS [ECF NO. 26]**

(8th Cir. 2006) (finding that "[a]n officer . . . could have reasonably concluded that [the defendant's] failure to signal his turn violated Iowa's traffic laws by failing to inform the gravel truck behind him that he intended to turn").[6]

The Burkley court took time to detail the meaning of the word "may," which is used in West Virginia's statute and all of the statutes discussed above:

> The word "may," used in its ordinary sense, expresses "ability, . . . contingency or liability, or possibility or probability," United States v. Lexington Mill & Elevator Co., 232 U.S. 399, 411, 34 S.Ct. 337, 58 L.Ed. 658 (1914) (internal quotation marks omitted) (alteration in original), not certainty or inevitability. "As such, the key words do not project a requirement that a turn movement must affect other traffic but merely that it has the potential of doing so." State v. Moss, 277 N.J.Super. 545, 649 A.2d 1349, 1350 (1994) (finding traffic stop justified where "there was other traffic that to some degree was likely to be affected" by turning vehicle); see also State v. Cox, 171 S.W.3d 174, 181 n. 7 (Tenn. 2005) (stating in dicta that traffic stop was valid where oncoming traffic and officer traveling behind defendant "could have been affected" by defendant's failure to signal before making left turn); State v. Seavey, 564 A.2d 388, 389 (Me. 1989) (defining issue as "not whether this police officer's actions as a driver were in fact affected, but whether the defendant should have concluded that the police car was 'other traffic [that] *may* be affected'" (quoting Me. Rev. Stat. Ann.

---

[6] The Eighth Circuit was applying Iowa law, which required a turn signal "in the event any other vehicle may be affected by such movement." Iowa Code § 321.314.

Case 1:24-cr-00061-TSK-MJA   Document 60   Filed 01/29/25   Page 14 of 14 PageID #: 299

USA V. BAILEY                                                    1:24-CR-61

**MEMORANDUM OPINION AND ORDER REJECTING REPORT AND RECOMMENDATION [ECF NO. 40] AND DENYING MOTION TO SUPPRESS [ECF NO. 26]**

> tit. 29, § 1191) (alteration in original)). We therefore disagree with Defendant's contention that the government was required to prove that traffic was actually affected by his unsignaled turn.

Burkley, 513 F.3d at 1187 n.1. Here, it was reasonable for Moore to believe that Defendant's turn, without using his signal, could have potentially affected Moore's vehicle. Again, "only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause" to stop a vehicle. See Gates, 462 U.S. at 235. Such a probability exists here. Accordingly, the traffic stop was constitutional.

## V.   CONCLUSION

For the reasons discussed above, the R&R is **REJECTED** [ECF No. 40], and Defendant's motion to suppress is **DENIED** [ECF No. 26].

It is so **ORDERED**.

The Clerk is **DIRECTED** to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: January 29, 2025

*/s/ Tom S. Kleeh*
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA